# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COUNSELNOW, LLC, a Utah limited liability corporation,<br><br>      **Plaintiff,**<br><br>v.<br><br>**DELUXE SMALL BUSINESS SALES INC.**, a Minnesota corporation and wholly owned subsidiary of DELUXE CORPORATION, and ORANGESODA, INC., a Nevada corporation that merged with DELUXE SMALL BUSINESS SALES, INC.,<br><br>      **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:19-cv-00284-DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Defendants Deluxe Small Business Sales, Inc. and OrangeSoda, Inc.'s Motion to Dismiss Plaintiff CounselNow, LLC's Third Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on November 26, 2019. At the hearing, Defendants were represented by Peter J. Gleekel and Stephen J. Trayner and Plaintiff was represented by Leah Jordana Aston. The court took the matter under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff CounselNow, LLC ("CounselNow") is a legal software development firm located in Orem, Utah. Defendant Deluxe Small Business Sales, Inc. ("DSBS") is a Minnesota

corporation and a wholly owned subsidiary of Deluxe Corporation ("Deluxe").  Defendant

OrangeSoda, Inc. ("OrangeSoda") was a Nevada corporation that was purchased by Deluxe in

2012 making it another wholly owned subsidiary of Deluxe.  DSBS and OrangeSoda merged in

2015.

In 2011, CounselNow established relationships with four consumer rights law firms:

Lincoln Law, Borowitz & Clark, Kirkpatrick and Associates, and The Law Offices of John T.

Orcutt.  These law firms are members of a larger group of consumer law firms from across the

country called the American Consumer Bankruptcy College ("ACBC").  A few law firms from

the ACBC, including Lincoln Law, hired CounselNow to create websites for their businesses.

However, neither CounselNow nor the law firms had any expertise in digital marketing or search

engine optimization[1] ("SEO") that would allow for potential customers to locate the websites.

Accordingly, the firms appointed CounselNow to find an SEO company that could help with the

law firms' websites.

As it began its search, CounselNow was adamant that any SEO company that it

introduced to its client law firms use only acceptable SEO methods.  More specifically,

CounselNow would not do business with a company that utilized what major search engines call

"black hat" or "gray hat" SEO strategies, i.e., strategies and practices that go against search

engine guidelines and which violate search engine terms of service.  Instead, CounselNow

sought an SEO company that utilized only "white hat" SEO strategies, i.e., tactics that are

approved by major search engines and comply with their terms and conditions.

In conducting its search, CounselNow came across OrangeSoda and began negotiating

with it regarding the services that the law firms needed.  Throughout the parties' negotiations,

---

[1] This is the process of maximizing the number of visitors to a particular website by ensuring that the site appears high on the list of results returned by search engines.

CounselNow represented that it would only bring its clients to OrangeSoda if OrangeSoda agreed that it would not use any black hat or gray hat SEO tactics. Eventually, OrangeSoda drafted a Memo of Understanding ("MoU") memorializing the terms that would govern CounselNow's and OrangeSoda's relationship. In the MoU, OrangeSoda represented that, among other things, (1) it was an expert in the SEO field and (2) it would not engage in any black hat or gray hat SEO tactics. Based on the parties' negotiations and OrangeSoda's representations in the MoU, CounselNow advised the law firms to retain OrangeSoda.

In February 2011, OrangeSoda entered into an Advertiser Insertion Order ("AIO") with Lincoln Law and two other law firms wherein it agreed to market the law firms' websites. Importantly, Andrew Gustafson ("Gustafson"), the Manager of CounselNow, signed the agreement on behalf of the law firms. The first five pages of the AIO contain boilerplate language. The sixth page consists of a fee schedule that is referenced in the first five pages. The seventh page is a revenue sharing and partnership agreement between OrangeSoda and CounselNow in which OrangeSoda agreed to pay CounselNow 40% of all net revenue that it received from any contracts of advertisers that engaged OrangeSoda through CounselNow. CounselNow intended to use the revenue it received under the agreement to develop a software program for bankruptcy law firms called CounselKit and an associated product called SiteKit.

To fulfill its contractual obligations to the law firms, OrangeSoda hired third-party SEO providers, one of which was called BuildMyRank. Unbeknownst to CounselNow or the law firms, however, both BuildMyRank and OrangeSoda engaged in prohibited black hat tactics in the work that they performed for the law firms. Eventually, in early 2012, Google punished BuildMyRank by deindexing the networks that it had created and maintained. In other words, Google removed the networks created by BuildMyRank from the search engine index used by

Google to find and list websites in search engine results. Consequently, many of the websites using BuildMyRank networks would no longer appear on any search engine results. And for the websites that did appear, they would not appear until the fourth, fifth, or even tenth page of the search results. Shortly thereafter, BuildMyRank went out of business.

Because the law firms' websites were heavily connected to BuildMyRank networks and because OrangeSoda directed and paid BuildMyRank to attach low quality links that it created to those websites, the web presence and prominence of the law firms plummeted after Google deindexed BuildMyRank. During the subsequent months, OrangeSoda was unable to restore any of the law firms' websites to the traffic position and keyword ranking that they had been prior to hiring OrangeSoda. Given the precipitous fall of the websites' search result rankings, one of the law firms cancelled its contract with OrangeSoda in December 2012. Eventually, all the law firms followed suit and cancelled their agreements with OrangeSoda, and in 2016, Lincoln Law and Borowitz & Clark sued OrangeSoda for breach of contract. While the cancellation of the contracts obviously resulted in a rapid decline in the revenue that CounselNow received pursuant to the revenue sharing agreement, OrangeSoda still made at least thirty-seven payments to CounselNow over the course of their relationship, totaling $155,701.91.

When the law firm websites' search result rankings plummeted, CounselNow initiated an investigation to ascertain the cause behind the drop. As part of the investigation, CounselNow had various conversations with employees of OrangeSoda, each of which reassured CounselNow that it had only utilized permissible SEO strategies. Thus, after concluding the investigation, CounselNow determined that OrangeSoda may have used black hat tactics on the law firms' websites, but that it had done so unknowingly. Then, years later, in January 2019, several OrangeSoda employees were deposed. In those depositions, CounselNow learned that despite its

original representations, OrangeSoda paid little attention to major search engine guidelines, implemented whatever SEO strategies it desired, and directed its employees to attach low-quality weblinks to the law firms' websites.

CounselNow instituted the present suit in November 2018 in Utah state court. After being served with a summons and second amended complaint in April 2019, Defendants removed the case to this court. Following removal, CounselNow filed a third amended complaint wherein it asserts five causes of action: (1) breach of contract as a party to the contract; (2) breach of contract as a third-party beneficiary to the contract; (3) fraud; (4) negligent misrepresentation; and (5) tortious interference with prospective business relations. CounselNow contends that by using black hat and gray hat SEO strategies, OrangeSoda breached its agreement to use only white hat SEO strategies for the law firms' websites. Moreover, CounselNow avers that OrangeSoda fraudulently and negligently misrepresented to CounselNow and the law firms that it would not use black hat or gray hat tactics. Lastly, CounselNow claims that OrangeSoda knew that CounselNow anticipated securing SEO business from other law firms and developing CounselKit, but OrangeSoda intentionally interfered with those prospective business relationships by utilizing improper SEO tactics.

## DISCUSSION

Defendants now move to dismiss each of CounselNow's five causes of action for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quotation marks omitted). "[A]ll well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most

favorable to the nonmoving party." *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, "[a] federal court sitting in diversity must apply the law of the forum state . . . with the objective that the result obtained in the federal court should be the result that would be reached in [a forum state] court." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 930 (10th Cir. 2018). Accordingly, the court will apply Utah law in resolving the pending motion.

## A. Breach of Contract

In order to properly state a claim for a breach of contract under Utah law, a plaintiff must allege "(1) [the existence of] a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224, 230–31. Importantly, Utah law imposes a six-year statute of limitations on breach of contract claims. Utah Code Ann. § 78B-2-309. "Generally, a cause of action accrues and the relevant statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." *S & G Inc. v. Intermountain Power Agency*, 913 P.2d 735, 740 (Utah 1996) (internal quotation marks omitted). "However, '[i]n a breach of contract action the statute of limitations ordinarily begins to run when the breach occurs.'" *Clarke v. Living Scriptures, Inc.*, 2005 UT App 225, ¶ 9, 114 P.3d 602, 603 (quoting

*Butcher v. Gilroy*, 744 P.2d 311, 313 (Utah Ct. App. 1987)).  This is because "[a] contract action ordinarily accrues at the time of breach."[2]  *S & G*, 913 P.2d at 740.

In this case, Defendants first argue that CounselNow's breach of contract claim should be dismissed because it is time-barred by the six-year statute of limitations.  In order to address this argument, the court must first ascertain when the relevant breach occurred.  In the Third Amended Complaint, CounselNow alleges that Google deindexed BuildMyRank in early 2012.  Thus, OrangeSoda allegedly breached the agreement in early 2012.  Following this initial breach, one of the law firms cancelled its agreement with OrangeSoda in December 2012.  Defendants therefore contend that, at the very latest, the breach forming the basis of CounselNow's claim for breach of contract occurred in December 2012.  As such, Defendants argue that CounselNow was required to file suit before December 2018.  Luckily, that is precisely what CounselNow did.  CounselNow filed the instant suit in Utah state court in November 2018—one month before Defendants claim that the statute of limitations expired.  Accordingly, for purposes of the pending motion, the court finds that CounselNow's breach of contract claim is timely.[3]

Notwithstanding their statute-of-limitations argument, Defendants contend that CounselNow has failed to state a breach of contract claim because the AIO constituted two separate agreements: (1) an SEO services agreement between OrangeSoda and the law firms; and

---

[2] CounselNow contends, as the general rule suggests, that the statute of limitations did not begin to run until the happening of the last event necessary to complete its cause of action, i.e., suffering damages.  However, in interpreting the Utah Supreme Court's decision in *S & G*, the Utah Court of Appeals determined that "in a breach of contract case, one *does not* await the accrual of damages to begin the running of the statute of limitations."  *Clarke*, 2005 UT App 225, ¶ 11, 114 P.3d 602 (emphasis added).  Consequently, in considering when the statute of limitations began to run, the court must not focus its inquiry on the time when CounselNow first suffered damages.

[3] At the hearing, Defendants argued that the breach occurred in early 2012 when Google deindexed BuildMyRank although they concede in their motion that the breach may have occurred in December 2012, which would make the claim timely.  Additionally, CounselNow conceded at the hearing that OrangeSoda may have breached the AIO as early as February 2011, which would make its claim untimely.  Given the uncertainty as to when the underlying breach occurred and the parties' seemingly contradictory arguments, the court concludes that it would be improper to dismiss CounselNow's claim based on the relevant statute of limitations at this juncture of the case.

(2) a revenue sharing agreement between OrangeSoda and CounselNow. Thus, because CounselNow was neither a party to the SEO services agreement, nor has it alleged that OrangeSoda violated the revenue sharing agreement, Defendants contend that CounselNow has failed to state a claim based on either of those contracts. Moreover, Defendants aver that the MoU cannot serve as a basis for CounselNow's claim given that it was an unenforceable agreement to agree and because the SEO services agreement contained an integration clause. Conversely, CounselNow contends that the AIO constituted one agreement because both the SEO services agreement and the revenue sharing agreement were stored as a single document and maintained a consistent header and footer across all pages. Further, it contends that the revenue sharing agreement was nothing more than a negotiated term between CounselNow and OrangeSoda. Because it avers that the AIO constitutes one agreement, CounselNow claims that it has stated a claim for breach of contract because it has alleged (1) the existence of a contract; (2) that it performed its part of the contract; (3) OrangeSoda breached the contract; and (4) that it was damaged by OrangeSoda's breach.

Given that this is a motion to dismiss and the court must accept all of CounselNow's well-pleaded facts as true, the court concludes that CounselNow has properly stated a claim for a breach of contract. First, whether the AIO constituted one or two agreements is a question of fact that would be more appropriately resolved at a later stage of the case, not on a motion to dismiss. Second, assuming that the AIO was one agreement, CounselNow has adequately pleaded each element of its breach of contract claim. Therefore, because the court concludes that CounselNow has properly stated a breach of contract claim, Defendants' motion is denied as to that claim.

## B. Third-Party Beneficiary

Because Defendants contend that the AIO was two different agreements and that CounselNow was not a party to the SEO services agreement, CounselNow argues, in the alternative, that it was an intended third-party beneficiary of the AIO. The Utah Supreme Court has defined third-party beneficiaries to a contract as "those 'recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration.'" *Bybee v. Abdulla*, 2008 UT 35, ¶ 35, 189 P.3d 40, 49 (quoting *Rio Algom Corp. v. Jimco, Ltd.*, 618 P.2d 497, 506 (Utah 1980)). To determine whether a party has third-party beneficiary status, courts first look to the written contract, *Wagner v. Clifton*, 2002 UT 109, ¶ 11, 62 P.3d 440, 442, and they will only find such status if "the parties to the contract clearly express an intention 'to confer a separate and distinct benefit' on the third party," *Bybee*, 2008 UT 35, ¶ 36, 189 P.3d 40 (quoting *Rio*, 618 P.2d at 506). Moreover, "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the [contract]. . . . The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." *Lilley v. JP Morgan Chase*, 2013 UT App 285, ¶ 5, 317 P.3d 470, 472 (alterations in original) (internal quotation marks omitted).

Here, Defendants contend that CounselNow was not an intended third-party beneficiary of the AIO. First, they argue that CounselNow's claim is barred by the applicable statute of limitations. Second, they point out that paragraph 21 of the AIO expressly disclaims any third-party beneficiaries:

> NO THIRD PARTY BENEFICIARIES: The covenants, undertakings, and agreements set forth in this Agreement are solely for the benefit of and enforceable by the Parties or their respective successors or permitted assigns.

Third, they aver that the AIO does not clearly intend to confer rights or benefits on CounselNow. In response, CounselNow claims that (1) the revenue sharing agreement clearly demonstrates OrangeSoda's and the law firms' intent to confer a benefit on CounselNow; (2) paragraph 21 was mere boilerplate language that the parties intended to disregard; (3) at the very least, the language of the contract is ambiguous and therefore the court should look to extrinsic evidence, including the MoU, which demonstrates a clear intent by OrangeSoda to make CounselNow a beneficiary of the AIO.

Preliminarily, as described in the preceding section, the court has already determined that CounselNow's contract-based claims are not time-barred. Nevertheless, CounselNow has failed to state a third-party beneficiary claim. First, as explained by the Utah Supreme Court, third-party beneficiaries are those that enjoy enforceable rights created by a contract "to which they are not parties and for which they *give no consideration*." *Bybee*, 2008 UT 35, ¶ 35, 189 P.3d 40 (emphasis added). In this case, CounselNow received no benefit under the AIO *unless* it found new clients for OrangeSoda. Put differently, CounselNow's contractual benefit was contingent on its ability to give consideration. Thus, CounselNow does not fit the definition of a third-party beneficiary under Utah law. Second, the AIO expressly disavows any third-party beneficiaries, and "Utah courts have dismissed . . . third-party beneficiary claim[s] pursuant to a Rule 12(b)(6) motion where the contract contained a clause declaring that there was no intended third-party beneficiary."[4] *Fornazor Int'l, Inc. v. Huntsman*, No. 2:14-CV-291 TS, 2015 WL 6142962, at *8 (D. Utah Oct. 19, 2015) (unpublished) (citing *Lilley*, 2013 UT App 285, ¶ 6, 317 P.3d 470 and

---

[4] On this point, the court finds the Tenth Circuit's opinion in *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230 (10th Cir. 2014) to be particularly instructive. In *Gorsuch*, the Tenth Circuit opined that "[a] party may allege it was intended to benefit from a contract, but such allegations do not overcome contradictory statements in the text of a contract attached to their complaint." *Id.* at 1238 (citing *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) ("[W]hen a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint.")). While the *Gorsuch* court was interpreting Colorado law, its reasoning applies with equal force in this case.

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 48, 28 P.3d 669, 685).  Third, given that paragraph 21 disclaims any third-party beneficiaries, the AIO lacks the clear intent to benefit CounselNow as a third-party beneficiary.  Accordingly, the court concludes that CounselNow has failed to state a third-party beneficiary claim.  Therefore, that cause of action is dismissed.

## C. Fraud

For a plaintiff to state a claim for fraud, he or she must allege the following elements:

(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he [or she] had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his [or her] injury and damage.

*Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 53 n.38, 201 P.3d 966, 977 (quoting *Dugan v. Jones*, 615 P.2d 1239, 1246 (Utah 1980)).  Utah imposes a three-year statute of limitations on fraud claims.  Utah Code Ann. § 78B-2-305(3).  Under the so-called "discovery rule," however, a fraud claim "does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."[5]  *Id.*  Importantly, "[a] plaintiff is deemed to have discovered his action when he has actual knowledge of the fraud or by reasonable diligence and inquiry should know, the relevant facts of the fraud perpetrated against him."  *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 17, 156 P.3d 806, 811 (internal quotation marks omitted).  In analyzing whether a plaintiff knew or should have known the facts giving rise to his or her fraud claim, the Utah Supreme Court has placed particular emphasis on the diligence requirement, *id.*,

---

[5] Because the statute of limitations for fraud claims, by its own terms, requires the application of the discovery rule, it is known as a "statutory discovery rule."  *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741, 746

and has articulated that "[a] party is required to make inquiry if his [or her] findings would prompt further investigation." *Baldwin v. Burton*, 850 P.2d 1188, 1197 n.44 (Utah 1993).

In this case, Defendants contend that the statute of limitations began to run in December 2012 after Google deindexed BuildMyRank, one of the law firms cancelled its contract with OrangeSoda, the law firms' search engine rankings plummeted, and CounselNow's revenue from the revenue sharing agreement was reduced. They contend that had CounselNow acted with reasonable diligence, it would have discovered its fraud claim no later than December 2012. On the other hand, CounselNow avers that its fraud claim is timely because it did not and could not have discovered that OrangeSoda had falsely represented its ability and intention to use white hat tactics until the January 2019 depositions. Significantly, CounselNow points to the fact that following the drop in the law firm websites' search result rankings, CounselNow initiated a thorough investigation to understand the cause of the drop.

The court concludes that, for purposes of resolving Defendants' motion to dismiss, the discovery rule applies, and CounselNow's fraud claim is therefore timely. The court reaches this conclusion for two reasons. First, CounselNow alleges in the Third Amended Complaint that it initiated a thorough investigation after the law firm websites' search engine rankings dropped. In the course of this investigation, CounselNow alleges that Gustafson communicated with account managers that managed the law firms' accounts, OrangeSoda's SEO director, and the CFO who originally marketed OrangeSoda's services to CounselNow. Throughout these discussions, CounselNow claims that these individuals reassured Gustafson that OrangeSoda used only acceptable SEO strategies and that OrangeSoda had proper procedures to ensure that its SEO strategies complied with Google's quality guidelines. Thus, CounselNow exercised reasonable diligence in such a way that justifies applying the discovery rule to toll the statute of

limitations. Second, the court finds that it would be premature to dismiss CounselNow's fraud claim at this early stage of the litigation. As a general matter, the determination of when a party should have known the facts forming the basis of a fraud claim is a question of fact. *Shiozawa v. Duke*, 2015 UT App 40, ¶ 14, 344 P.3d 1174, 1180. Moreover, "at what point a party should have reasonably discovered its claim is a fact-intensive inquiry" that precludes dismissal "in all but the clearest of cases." *Id.* (internal quotation marks omitted) (reversing the trial court's grant of *summary judgment* because there remained issues of fact as to when the plaintiffs discovered the facts surrounding their fraud claim); *see also Russell Packard*, 2005 UT 14, ¶ 22, 108 P.3d 741 ("[D]etermining when a plaintiff either discovered or reasonably should have discovered his or her cause of action is often a difficult and intensely fact-dependent inquiry."). Because this case does not appear to be one of "the clearest of cases," the court rejects Defendants' invitation to dismiss CounselNow's fraud claim based on the statute of limitations.

In the alternative, Defendants assert that CounselNow's fraud claim is barred by the economic loss rule.[6] The economic loss rule "marks the fundamental boundary between contract law . . . and tort law." *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 18, 221 P.3d 234, 242. The rule "prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute." *Reighard v. Yates*, 2012 UT 45, ¶ 14, 285 P.3d 1168, 1174. Accordingly, once a contract exists, any tort claim that a party wishes to assert "must be premised upon an

---

[6] Defendants also suggest that CounselNow's fraud and negligent misrepresentation claims must be dismissed because they are based on allegations that OrangeSoda misrepresented its SEO capabilities in the AIO. Yet, because they claim that CounselNow was neither a party to nor a third-party beneficiary of the AIO, its fraud claim cannot survive. Given, however, that the court has concluded that CounselNow has stated a breach of contract claim as potential party to the AIO, Defendants' argument is unavailing.

independent duty that exists apart from the contract," and "[a]ll contract duties, and all breaches of those duties . . . must be enforced pursuant to contract law." *Id.* at ¶ 21.

Defendants contend that CounselNow's fraud claim is based strictly on OrangeSoda's duties under the AIO, and CounselNow has failed to allege an independent duty under tort law. Conversely, CounselNow argues that its fraud claim does not overlap entirely with the contractual duty that OrangeSoda breached, i.e., to use only permissible SEO tactics. While OrangeSoda did breach the AIO, CounselNow claims that OrangeSoda made several false statements and promises *before* the parties entered into the AIO, which serve as independent bases for its fraud claim.[7]

The court concludes that CounselNow's fraud claim is not barred by the economic loss doctrine. As stated in the preceding paragraph, CounselNow alleges that, before it entered into any agreement, OrangeSoda represented that it followed major search engine guidelines and did not engage in black hat SEO tactics. CounselNow argues that it was those misrepresentations that fraudulently induced it to enter into an agreement with OrangeSoda. Thus, CounselNow is not relying simply on the fact that OrangeSoda breached the agreement. Rather, it is alleging that OrangeSoda defrauded it well before the parties ever consummated any contractual

---

[7] CounselNow also argues that "[a] claim for fraud in the inducement cannot be barred by the economic loss doctrine . . . because . . . the doctrine only applies to bar tort claims that fall within the 'bargained-for duties and liabilities' of a contract." *Associated Diving & Marine Contractors, L.C. v. Granite Const. Co.*, No. 2:01CV330 DB, 2003 WL 25424908, at *7 (D. Utah July 11, 2003) (unpublished). The Utah Supreme Court, however, has specifically refrained from deciding whether there exists a blanket exception to the economic loss rule for fraud claims. *See HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 1, 435 P.3d 193, 194. In *HealthBanc*, the Utah Supreme Court received a certified question from this District asking it to decide whether, under Utah law, the economic loss rule extends to the tort of fraudulent inducement. *Id.* In providing its answer, the court opted to reframe the question and held that there is no fraud exception to the economic loss rule when the alleged fraudulent inducement "arises out of the very grounds alleged as a basis for a breach of contract action." *Id.* While that is not the case here given that CounselNow has alleged distinct grounds for its fraud claim, to the extent CounselNow suggests that fraud claims, as a matter of law, are outside the scope of the economic loss doctrine, the court rejects that assertion.

agreement.  As such, CounselNow has articulated an independent basis to support its fraud claim.[8]

Therefore, the court concludes that CounselNow has properly stated a claim for fraud under Utah law.  Consequently, the court denies Defendants' motion as to CounselNow's fraud claim.

### D.  Negligent Misrepresentation

The elements of a negligent misrepresentation claim "are similar to those of fraud except that negligent misrepresentation 'does not require the intentional mental state necessary to establish fraud.'"  *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 11, 314 P.3d 1079, 1085 (quoting *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986)).  Instead, the requisite mental state for negligent misrepresentation is that the defendant "carelessly or negligently ma[de] a false representation."  *Moore v. Smith*, 2007 UT App 101, ¶ 36 n.12, 158 P.3d 562, 573.

Under Utah law, negligent misrepresentation claims are subject to a four-year statute of limitations.  *Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1254 (D. Utah 2017) (citing *DOIT, Inc. v. Touche, Ross & Co*, 926 P.2d 835 (Utah 1996)); Utah Code Ann. § 78B-2-307(3).  As stated above, the general rule regarding statute of limitations is that the time limit begins to run "upon the happening of the last event necessary to complete the cause of action."  *S & G*, 913 P.2d at 740.  Yet, even after the last element of a claim has occurred, as discussed in the preceding section, the discovery rule can function to toll the relevant time period until a party

---

[8] As a part of its fraud claim, CounselNow argues that OrangeSoda owed and violated independent duties of special competency and professionalism.  The cases that CounselNow cites in support of these duties are *Hermansen v. Tasulis*, 2002 UT 52, ¶ 20, 48 P.3d 235, 241 (special competency) and *Dugan v. Jones*, 615 P.2d 1239, 1248 (Utah 1980).  But, as Defendants point out, both cases involved duties that were imposed on licensed real estate professional, and CounselNow has provided no authority to support the notion that such duties apply to any other businesses.  The court is therefore unconvinced that those independent duties apply in this case.  And, in any event, the court is persuaded that CounselNow has stated a claim for fraud irrespective of those purported duties.

discovers the facts giving rise to his or her claim.  But unlike claims for fraud, negligent

misrepresentation claims are not accompanied by a statutory discovery rule.  *See* Utah Code

Ann. § 78B-2-307(3).  Accordingly, a plaintiff may only rely on the "equitable discovery rule"—

a discovery rule that operates to toll a statute of limitations, but which is not contained within the

terms of the statute itself.  *Russell Packard*, 2005 UT 14, ¶ 24, 108 P.3d 741.  The Utah Supreme

Court has explained that the equitable discovery rule may toll a statute of limitations in only two

situations:

> (1) where a plaintiff does not become aware of the cause of action because of the
> defendant's concealment or misleading conduct, and (2) where the case presents
> exceptional circumstances and the application of the general rule would be
> irrational or unjust, regardless of any showing that the defendant has prevented the
> discovery of the cause of action.

*Id.* at ¶ 25.

Here, Defendants contend that CounselNow's negligent misrepresentation claim is time-

barred because CounselNow was aware of its claim by December 2012.  Consequently, they

claim that CounselNow was required to bring its claim no later than December 2016.  Contrarily,

CounselNow asserts that the statute of limitations was tolled due to the equitable discovery rule.

It contends that there is no way it could have known the facts giving rise to its claim before the

January 2019 depositions because OrangeSoda actively misled it.

Based on the allegations in the Third Amended Complaint, the court concludes that the

equitable discovery rule does not apply to CounselNow's negligent misrepresentation claim, and

it is therefore barred by the applicable four-year statute of limitations.  Importantly, after

CounselNow initiated its investigation, it determined that "although OrangeSoda may have used

black hat tactics on the law firms' websites, *they had not done so knowingly.*"  Third Am.

Compl. at ¶ 106 (emphasis added).  In other words, as a result of the investigation, CounselNow

knew that OrangeSoda may have used black hat tactics on the websites carelessly or negligently. Because CounselNow concedes that it had knowledge that OrangeSoda may have carelessly or negligently utilized improper SEO tactics at that point in time, it had sufficient information to bring its negligent misrepresentation claim and for the statute to begin running. Thus, when CounselNow filed sued in Utah state court in November 2018, the time period in which it was required to bring its claim had long since run. Hence, CounselNow's claim does not fall within the first situation for the equitable discovery rule to apply. Nor does it fall within the second situation. This is not a case presenting exceptional circumstances that would lead to an unjust result if the court refrained from applying the equitable discovery rule. Therefore, the court finds that the equitable discovery rule does not apply.[9] Consequently, CounselNow's negligent misrepresentation claim is time-barred, and Defendants' motion as to that claim is granted.

### E. Tortious Interference with Prospective Business Relations

To properly state a claim for tortious interference with prospective economic or business relations under Utah law, a plaintiff must allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553, 565 (ellipsis omitted). For the first element, "intent" is defined as when a party either "desire[s] to bring about certain consequences," *id.* at ¶ 66, or "knows that . . . interference is substantially certain to

---

[9] There are two important distinctions between CounselNow's negligent misrepresentation claim and its fraud claim that make the former subject to dismissal but not the latter. First, the negligent misrepresentation claim must rely on the equitable discovery rule, which only applies in two narrow situations, while the fraud claim can rely on the statutory discovery rule. Second, the mental state for fraud requires a defendant to act intentionally or recklessly, while the mental state for negligent misrepresentation requires a defendant to act carelessly or negligently. The Third Amended Complaint demonstrates that CounselNow was aware, immediately following the investigation, that OrangeSoda acted carelessly or negligently, but not intentionally or recklessly. Indeed, the Third Amended Complaint alleges that it was not until the January 2019 depositions that CounselNow became aware of OrangeSoda's alleged intentional or reckless conduct. Accordingly, the allegations in the Third Amended Complaint demonstrate that, for purposes of the present motion, the statute of limitations should be tolled for the fraud claim, but not the negligent misrepresentation claim.

occur as a result of [the party's] action[s]," *Mumford v. ITT Commercial Fin. Corp.*, 858 P.2d 1041, 1044 (Utah Ct. App. 1993).  For the second element, the term "improper means" is defined as "conduct contrary to law—such as violations of statutes, regulations, or recognized common-law rules—or the violation of an established standard of a trade or profession."  *C.R. England v. Swift Transportation Co.*, 2019 UT 8, ¶ 48, 437 P.3d 343, 355.  More specifically, improper means include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood."  *Keith v. Mountain Resorts Dev., L.L.C.*, 2014 UT 32, ¶ 46, 337 P.3d 213, 227.  In addition, claims for tortious inference with prospective business relations are subject to a four-year statute of limitations.  Utah Code Ann. § 78B-2-307(3).

As with CounselNow's other claims, Defendants first contend that this claim is barred by the statute of limitations.  They aver that CounselNow was aware of the full effect of OrangeSoda's actions by December 2012.  Thus, they assert that CounselNow was required to bring its claim by December 2016.  Nevertheless, Defendants further suggest that CounselNow has failed to plead any facts establishing that they did anything to directly interfere with CounselNow's prospective business dealings.  In response, CounselNow contends that it could not have discovered OrangeSoda's intent until the January 2019 depositions.  It therefore claims that its claim is timely.  CounselNow also suggests that whether its delay in filing its claim is justified is a factual determination that should be left to the finder of fact.  Moreover, CounselNow argues that it has adequately pleaded each element of its cause of action.  It claims that it had prospective business relations with other law firms looking for SEO services; that OrangeSoda knew that its actions were substantially certain to cause an interference with CounselNow's business relations; OrangeSoda engaged in improper means by violating

Google's terms of service and fraudulently inducing it to do business with OrangeSoda; and it was injured as a result of OrangeSoda's conduct.

Preliminarily, the court will refrain from granting Defendants' motion based the statute of limitations. In its Opposition, CounselNow avers that it "only learned facts sufficient to support . . . that OrangeSoda had [the] requisite intent" for its tortious interference claim through the January 2019 depositions. Pl.'s Opp'n at 17. Thus, CounselNow is essentially advocating for the discovery rule to apply to its tortious interference claim. Because CounselNow's tortious interference claim is subject to the same four-year statute of limitations as its negligent misrepresentation claim, *see* Utah Code Ann. § 78B-2-307(3), and since that statute contains no statutory discovery rule, CounselNow must rely on the equitable discovery rule. Therefore, CounselNow's claim must fit within one of the two situations discussed above for the equitable discovery rule to toll the statute. In the Third Amended Complaint, CounselNow claims that it was unable to discover OrangeSoda's allegedly fraudulent misrepresentations until the January 2019 depositions because OrangeSoda had actively misled CounselNow to believe that it utilized proper SEO tactics. Because this is a motion to dismiss and the court must accept CounselNow's well-pleaded facts as true, the court concludes that CounselNow has pleaded sufficient facts for its claim to fit under the first situation of the equitable discovery rule. Accordingly, for purposes of this motion, the court finds that CounselNow's tortious interference claim is not time-barred because the equitable discovery rule operated to toll the statute of limitations.[10]

Beyond Defendants' statute-of-limitations argument, the court finds that CounselNow has stated a claim for tortious interference with prospective business relations. Under the second

---

[10] The court finds it necessary to emphasize that nothing in its decision on this claim or CounselNow's fraud claim precludes Defendants from raising a statute-of-limitations argument at a later stage of the proceedings following the development of the facts through discovery.

definition of intent, CounselNow has adequately alleged that OrangeSoda intentionally interfered with CounselNow's prospective business opportunities. In other words, CounselNow has alleged that OrangeSoda was substantially certain that its actions would interfere with CounselNow's prospective business relations and that those prospective business relations actually existed. Although Defendants argue that CounselNow has failed to identify a specific law firm with whom it had prospective economic relations, the court is persuaded that CounselNow has provided sufficient factual detail surrounding its potential economic relationships to support its claim at this stage of the case.

Next, the court finds that CounselNow has properly pleaded that OrangeSoda interfered with CounselNow's potential business relations through improper means. As stated above, improper means can include deceit or misrepresentation. *Keith*, 2014 UT 32, ¶ 46, 337 P.3d 213. Here, CounselNow essentially alleges that OrangeSoda fraudulently induced CounselNow to enter into the AIO. CounselNow claims that had OrangeSoda not misrepresented its ability to provide proper white hat SEO services, CounselNow would have chosen a different company to introduce to the law firms, and CounselNow's prospective relationships with other law firms would not have been frustrated. The court believes that this is sufficient to allege improper means. The court, however, makes one point of clarification. CounselNow also argues that OrangeSoda engaged in improper means by using black hat and gray hat tactics with the law firms' websites. This conduct, CounselNow avers, exemplifies the violation of an "established standard of a trade or profession." While that may be true, OrangeSoda's use of inappropriate SEO tactics cannot serve as improper means in this case because that conduct also constituted a breach of the parties' agreement, and under Utah law, "[a] deliberate breach of contract, even where employed to secure economic advantage, is not, by itself, an improper means." *C.R.*

*England*, 2019 UT 8, ¶ 42 n.74, 437 P.3d 343 (alteration in original) (internal quotation marks omitted).  Thus, CounselNow may base its claim of improper means on OrangeSoda's alleged fraud, but CounselNow is precluded, as a matter of law, from arguing that OrangeSoda's breach of the AIO—that is, employing black hat and gray hat tactics—constitutes an improper means.

Lastly, CounselNow has adequately alleged that it was injured by OrangeSoda's actions. CounselNow alleges that as a result of OrangeSoda's interference with its potential business relationships, its reputation was damaged, it lost business opportunities, it lost potential earnings, and it was delayed in bringing its software products to market.

The court therefore concludes that CounselNow has stated a claim for tortious interference with prospective business relations under Utah law.  As such, Defendants' motion as to that claim is denied.

## CONCLUSION

Based on the foregoing reasoning, Defendants' Motion to Dismiss CounselNow's Third Amended Complaint is hereby GRANTED in part and DENIED in part.  Defendants' motion is GRANTED as to CounselNow's third-party beneficiary and negligent misrepresentation claims, and those two claims are dismissed with prejudice.  Conversely, Defendants' motion is DENIED as to CounselNow's breach of contract, fraud, and tortious interference with prospective business relations claims.

Dated this 20th day of December, 2019.

BY THE COURT:

DALE A. KIMBALL
United States District Judge